**TEXAS COMMERCE BANCSHARES, INC., John E. Kayander, Employees Group Welfare Benefit Plan, and Texas Commerce Bank National Association, as Trustee**

v.

**Philip W. BARNES, Commissioner of the Texas Board of Insurance, Claire Korioth, Chair of the Texas State Board of Insurance, Richard F. Reynolds, Member of the State Board of Insurance, an as Yet Unnamed Member of Insurance, and Dan Morales, Attorney General of the State of Texas.**

Civ. No. A–91–CA–401.

United States District Court,
W.D. Texas,
Austin Division.

Aug. 18, 1992.

Larry F. York, Baker & Botts, Austin, Tex., Claudia W. Frost, Walter E. Work-man, Baker & Botts, Houston, Tex., for plaintiffs.

William E. Storie, Attorney General's Office, Taxation Div., Austin, Tex., for defendants.

## OPINION AND ORDER

NOWLIN, District Judge.

Before the Court are the motions for judgment filed by the parties. On January 10, 1992, this Court entered an Agreed Partial Judgment in this action. This order resolves the remaining issues that the parties were unable to reach an agreement upon.

The issues in the present action were decided for the most part by this Court in a decision, the holdings of which were affirmed by the Fifth Circuit. *See Birdsong v. Olson*, 708 F.Supp. 792 (W.D.Tex.1989); *see also E–Systems, Inc. v. Pogue*, 929 F.2d 1100 (5th Cir.1991) *cert. denied* —— U.S. ——, 112 S.Ct. 585, 116 L.Ed.2d 610 (1991). The effect of these decisions nullifies the Texas Administrative Services Tax Act (ASTA) because of preemption by ERISA, as well as causes the refund all ASTA taxes paid under protest with both prejudgment and postjudgment interest. The remaining disputed issues concern compensation for reasonable attorney's fees and expenses incurred by the ERISA plaintiffs.

### I. Awarding Attorney's Fees Under ERISA

ERISA expressly permits a federal court, in its discretion, to award reasonable attorney's fees and costs to either party in an action brought pursuant to ERISA. *See* 29 U.S.C. § 1132(g)(1). The Defendants have conceded that an award of such fees and costs related to the litigation before this Court is entirely within this Court's discretion. The Plaintiffs have completely prevailed upon the merits of this action.

The Defendants have further conceded that the Eleventh Amendment does not prohibit the award of attorney's fees for the services rendered in this federal action. *See* Defendant's Supplemental Reply Brief,

filed April 13, 1992. Indeed, the Supreme Court has held that an award of attorney's fees ancillary to prospective relief does not violate the Eleventh Amendment. *See Missouri v. Jenkins,* 491 U.S. 274, 277–279, 109 S.Ct. 2463, 2466–2467, 105 L.Ed.2d 229 (1989). In *Missouri v. Jenkins,* the Court reaffirmed this holding and further held that an award of such attorney's fees could also be enhanced for a delay in payment. *Id.,* 491 U.S. at 283, 109 S.Ct. at 2469. The Court further held that reasonable attorney's fees included separate billing for the law clerks, paralegals, and recent law school graduates, if in accordance with the prevailing rates and billing practice in the relevant market. *See id.,* 491 U.S. at 285–289, 109 S.Ct. at 2470–2472.

In civil rights' actions, the Supreme Court has stated that the prevailing party should ordinarily recover a fee unless "special circumstances" would render such an award unjust. *See Blanchard v. Bergeron,* 489 U.S. 87, 89 n. 1, 109 S.Ct. 939, 942 n. 1, 103 L.Ed.2d 67 (1989). Discussing reasonable attorney's fees awards, the Court explained:

> Fee awards are to be reasonable, reasonable as to billing rates and reasonable as to the number of hours spent in advancing the successful claims. Accordingly, fee awards, properly calculated, by definition will represent the reasonable worth of the services rendered in vindication of a plaintiff's civil rights claim. It is central to the awarding of attorney's fees under § 1988 that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case. The trial judge should not be limited by the contractual fee agreement between plaintiff and counsel.

*Id.,* 487 U.S. at 96, 109 S.Ct. at 946. To determine whether a plaintiff is entitled to reasonable attorney's fees in a civil rights action, the Supreme Court has stated that "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *See Texas State Teachers v. Garland Independent School District,* 489 U.S. 782, 792, 109 S.Ct. 1486, 1493, 103

L.Ed.2d 866 (1989). When such a change has occurred, the degree of the plaintiff's success affects the reasonableness of the fee award, and not the availability of a fee award. *Id.*

To determine whether attorney's fees should be awarded in such an ERISA action, under 29 U.S.C. § 1132(g), the federal courts consider the following factors:

(1) the degree of the opposing party's culpability or bad faith;

(2) the ability of the opposing party to satisfy an award of attorney's fees;

(3) the deterrent effect of an award on other persons under similar circumstances;

(4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or a significant legal question regarding ERISA; and

(5) the relative merits of the parties' positions.

*See Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980) (citations omitted); *see also Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1301 (6th Cir.1991) (citation omitted). No single factor is decisive, but a federal court should consider all of these criteria. *Iron Workers Local No. 272,* 624 F.2d at 1266. Unlike civil rights actions in which the prevailing plaintiffs should be awarded fees unless special circumstances would render such an award unjust, the Fifth Circuit has recognized that attorney's fees should be awarded less routinely in ERISA actions because the policies are not as important as those underlying civil rights actions and because such fees are less necessary for enforcement of ERISA policies. *See id.* at 1264–1266. When applying these factors, the federal courts should try to promote ERISA's primary remedial purpose, protecting the beneficiaries. *See Nachwalter v. Christie,* 805 F.2d 956, 962 (11th Cir.1986) (citations omitted). This purpose often weighs against charging fees against ERISA beneficiaries because actions by such persons are vital to further ERISA's purpose. *See id.* (citations omitted). In the present action, the

fees are not sought against the beneficiaries; however, if the prevailing plaintiff plans are not awarded fees, the beneficiaries will indirectly bear the costs of this litigation which was necessitated by the State's imposition of an unlawful tax on the ERISA plans.

■ In the present action, the following factors weigh in favor of an award of attorney's fees. Initially, the Defendants have strongly opposed this litigation at every stage, and though not necessarily bad faith, the Defendants have conceded that ASTA was ill-conceived and flawed. The Defendants culpability for the implementation and enforcement is high. The Defendants, through the State, clearly have the ability to satisfy an award of attorney's fees. Although the State has argued that an award of fees will not serve as a deterrent, an award of fees will serve as a deterrent to States from enacting and enforcing legislation that is preempted by ERISA. The Plaintiffs have sought to confer, and have conferred, a common benefit on all participants and beneficiaries of the relevant ERISA plans. The relative merits of the parties positions have been demonstrated by the Fifth Circuit's decision in *E–Systems*. Because all of these factors weigh in favor of the Plaintiffs, this Court finds that an award of reasonable attorney's fees and costs to the Plaintiffs for this federal litigation is justified.

## II.  Restoring The Status Quo

■ Plaintiffs rely heavily upon the Fifth Circuit's statement, "The parties are to be returned to the status quo ante." *See E–Systems v. Pogue*, 929 F.2d at 1104 (the Fifth Circuit affirmed the judgments of this Court that ERISA preempts ASTA and that any ASTA taxes collected by the State of Texas must be refunded). This statement must be read within the context in which it was made:

> The State received monies from the ERISA plans to which it was not entitled. The funds must be returned. The parties must be restored to the status quo ante. That includes appropriate consideration of the loss of use of the funds for

the period involved, an issue pending before this court in another appeal.

*See id.* Viewed in this context, the statement appears to be limited to a return of the ASTA taxes already paid by the ERISA plans, as well as the appropriate prejudgment and postjudgment interest thereon. This language, in its context, does not appear to compel or justify a broader construction. Otherwise, the consequential damages suffered by the plaintiffs could be limitless.

The Plaintiffs cite to dicta in a Supreme Court case that implies that restoring parties to the status quo "is within the recognized power and within the highest tradition of a court of equity." *See Porter v. Warner Holding Company*, 328 U.S. 395, 402, 66 S.Ct. 1086, 1091, 90 L.Ed. 1332 (1946). The *Porter* case involved the collection of rents is excess of the maximum amounts allowed by law during World War II. The Supreme Court only held that the district court could indeed order restitution of the excess amount of rents collected by a private party. *See generally id.* The Court did not mention attorney's fees or bond premiums.

The Plaintiffs also have referred to a Fifth Circuit case to support their argument for restitution. *See Jamail, Inc. v. Carpenters District Council*, 954 F.2d 299 (5th Cir.1992). In *Jamail*, as a matter of federal common law applying ERISA, the Fifth Circuit held that any overpayments to an ERISA plan by an ERISA participant must be refunded to the participant. *See id.* at 305 and 306. The Fifth Circuit did allow the ERISA administrator to deduct an administrative expense fee from the amount to be refunded. *Id.* at 306. The Fifth Circuit did not mention the availability of compensatory damages for the ERISA participant who had overpaid its contributions.

The Defendants refer to another Supreme Court case to support their position that the other damages, such as bond premiums, are not permitted by ERISA. The Supreme Court case only addressed the personal liability of a ERISA fiduciaries to ERISA beneficiaries for extracontractual

damages. *See Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 146–148, 105 S.Ct. 3085, 3092–3093, 87 L.Ed.2d 96 (1985). Specifically only construing Section 409(a) of ERISA, 29 U.S.C. § 1109(a), the Supreme Court concluded that ERISA does not provide "a cause of action for extracontractual damages caused by improper or untimely processing of benefit claims." *See id.*, 473 U.S. at 146, 105 S.Ct. at 3092. Indeed, in the same opinion the Supreme Court specifically stated that it did not consider the extent to which ERISA "may authorize recovery of extracontractual compensatory or punitive damages from a fiduciary by a *plan*." *See id.*, 473 U.S. at 144 n. 12, 105 S.Ct. at 3091 n. 12.

The Defendants emphasize the minimum requirement of a fiduciary duty relationship between the parties before compensatory damages, if any, should be allowed. The Defendants rely on cases that involved actions between the various participants in ERISA plans. The cases did not involve blatant attempts by a State to override federal law in violation of the Supremacy Clause. When a federal law has been violated by state action, the aggrieved parties should have remedies available for such unlawful acts. However, under the unique facts and circumstances of this case, the remedies available from this Court must be limited to the federal litigation.

Because the Defendants have enforced and sought to enforce a state law that is in violation of and is preempted by ERISA, the Plaintiffs are entitled to reasonable attorney's fees incurred in this action to enjoin and remedy the unlawful conduct by the Defendants.

III. Attorney's Fees and Costs in the State Court Actions

■ The attorney's fees generated because of the state court action are not properly compensable by this Court. The plaintiffs pursued another avenue of relief in the state courts. The state court has the authority and discretion to determine if party is entitled to reasonable attorney's fees and costs, as well as the appropriate amount. Specifically, in a declaratory judgment action, the state court "may award costs and reasonable and necessary attorney's fees as are equitable and just." *See* Tex.Civ.Prac. & Rem.Code § 37.009 (Vernon 1986). Additionally, a state court may grant such further relief whenever necessary and proper. *See id.* at § 37.011. Such relief could include the expenses related to the payment of the bond premiums by the plaintiffs. There is no need for this Court to determine the reasonable attorney's fees and costs related to the state court litigation. The state court has the ability to do so. The state court is also much more cognizant of the litigation that has occurred before it. The state court, therefore, should determine what, if any, fees and expenses are appropriate for that litigation.

The plaintiffs in this action had two permissible options under the state statutory scheme for protesting the payment of a state tax. The plaintiffs could have paid the taxes under protest and contested the taxes pursuant to the statutorily allowed method. Alternatively, the plaintiffs could have posted a bond, equal to twice the amount of the taxes. *See generally*, Tex. Gov't Code Ann. §§ 403.201–403.221, *specifically* § 403.212(a)(2).

In this case, the plaintiffs apparently undertook both options. Apparently, the plaintiffs posted a bond three times and paid the taxes under protest thirteen times. The plaintiffs could have pursued either option. By pursuing the bond option, the plaintiffs incurred bond premium expenses. Such expenses did not have to be incurred. Additionally, the costs of such premiums were incident directly to the state court action, not to the action in this Court. If reimbursement is appropriate for those expenses, the state court should make such a determination.

The Defendants have stated that the separate state proceedings should not be considered part of the federal action unless the plaintiff is pursuing a *mandatory* state remedy. The Supreme Court decision that the Defendants base their suggestion upon does not so hold. *See generally, Webb v. Board of Education of Dyer County*, 471

U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985). The Court stated that administrative proceedings established to enforce tenure rights created by state law are not any part of the proceedings to enforce 42 U.S.C. § 1983 of the civil rights statute. *See id.,* 471 U.S. at 241, 105 S.Ct. at 1927–1928. The Court emphasized that the facts and circumstances of that case easily permitted a distinction to be made between the work done at the administrative level and the work done before the federal courts. *See id.,* 471 U.S. at 242–243, 105 S.Ct. at 1928. Although it held that the administrative work was not compensable in the case before it, the Court did imply that the prevailing party could obtain some fee award for a portion of the work product from the administrative proceedings that was both useful and necessary to advance the litigation. *See id.,* 471 U.S. at 243, 105 S.Ct. at 1928–1929. In the present litigation, some of the litigation in state court must have helped the Plaintiffs pursuit of their rights in federal court.

## IV. CONCLUSION

The Plaintiffs in this action clearly prevailed upon all of their major claims, and the Defendants have, after the denial of certiorari by the Supreme Court in the *E–Systems* decision, finally conceded as much. When a State enacts legislation that is obviously on such an insecure legal foundation, if there really ever was one to begin with, as ASTA was, the state officials who vigorously and stubbornly continued to enforce the act must be held responsible for the reasonable attorney's fees incurred in federal court by those aggrieved by the state action. To deny such fees would encourage States to try every angle seeking new sources of revenue or control while avoiding the preemptive scope of ERISA. To make the ERISA participants and plans bear the expenses of litigation in which they are successful against the State would be contrary to the central purposes of ERISA. This Court is also aware that imposing attorney's fees awards upon the State is effectively imposing the fee upon the citizens of the State. However, the state officials must not be permitted to abuse their vast arsenal of litigation and administrative weapons at the expense of private parties. Indeed, most of the participants in the affected ERISA plans are citizens of the State of Texas. If the citizens of the State do not want to bear the expenses caused by the State's attempted enforcement of invalid laws, the citizens have the ability to control their elected officials each and every time the officials are up for election.

IT IS ORDERED that the attorney's fees and costs incurred by the Plaintiffs in the state court action, as well as the bond premiums, are not compensable by this Court, but these expenditures may be awarded by the state court.

IT IS FURTHER ORDERED that the Defendants shall reimburse the Plaintiffs for the reasonable attorney's fees and costs incurred by the Plaintiffs in pursuit of the federal litigation. The parties should consider the *Johnson* factors [1], as well as the other factors discussed above, and attempt to reach an agreement, within 20 days from the filing date of this order, concerning the reasonable attorney's fees and expenses incurred by the Plaintiffs in the federal litigation of this case. The parties are strongly encouraged to reach an agreement as to the proper amount of fees and costs. Otherwise, this Court will entertain a motion for fees and costs in accordance with the law, the Local Rules, and this opinion.

---

1. These twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; and (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Hensley v. Eckerhart,* 461 U.S. 424, 430 n. 3, 103 S.Ct. 1933, 1937 n. 3, 76 L.Ed.2d 40 (1983) (referring to *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir.1974)).