**Nancy KOEHLER, Plaintiff,**

v.

**AETNA HEALTH INC., Defendant.**

**No. 3–10–CV–1063–F.**

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 9, 2013.

James L. Johnson, Johnson Law Firm, Dallas, TX, for Plaintiff.

John B. Shely, Dimitri Zgourides, Andrews Kurth, Houston, TX, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

ROYAL FURGESON, Senior District Judge.

BEFORE THE COURT is Plaintiff Nancy Koehler's Motion for Attorney's Fees (Docket No. 71). After this Court granted Summary Judgment for Defendant Aetna Health Inc. ("Aetna") (Docket No. 46) on April 29, 2011, Plaintiff appealed the ruling to the Fifth Circuit (Docket No. 48). Following the Fifth Circuit's reversal and remand of this Court's summary judgment (Docket No. 57), Ms. Koehler now moves for an award of attorney's fees, currently in the amount of $101,787.10. and of costs in the amount of $276.00. After considering the clarity of the Fifth Circuit's ruling regarding the merits of both parties' positions, Plaintiff's motion is GRANTED IN PART and DENIED IN PART. Defendant Aetna Health Inc. is ORDERED to pay to Plaintiff attorney's fees in the amount of $93,236.60.[1]

### Background

On June 2, 2009, Plaintiff visited an out-of-network physician, Dr. Whitmore, to obtain a sleep apnea device without a referral from her Primary Care Provider ("PCP") Dr. Checo. Instead, Dr. Kakar, a Participating Provider but not Plaintiff's PCP, sent Plaintiff to Whitmore for the device. In doing so, Dr. Kakar did not seek approval or any authorization from Aetna for a referral to Dr. Whitmore prior to the services being performed. Aetna denied Dr. Whitmore's medical claim in the amount of $2300, claiming there was no preauthorization for the out-of-network services. Plaintiff sued to recover that amount, asserting a claim for ERISA plan benefits, under 29 U.S.C. § 1132(a)(1)(B).

Aetna moved for summary judgment on the grounds that the COC expressly excluded the out-of-network services at issue. On April 29, 2011, this Court granted Aetna's motion, relying on the Fifth Circuit's ERISA abuse of discretion standard articulated in *Rhorer v. Raytheon Engineers and Constructors, Inc.* 181 F.3d 634, 639–43 (5th Cir.1999).

The Fifth Circuit reversed this Court's grant of summary judgment for Aetna,

---

1. This resolves Dkt. No. No 71

finding a fact issue on whether Aetna acted in bad faith. *Koehler v. Aetna Health Inc.*, 683 F.3d 182 (5th Cir.2012). The Fifth Circuit did not render final judgment but remanded the case back to this Court for further consideration on the merits of Plaintiff's claim.

Aetna originally denied Ms. Koehler's claim for $2,300 in medical benefits for a sleep apnea device based on a claimed exclusion in an ERISA benefits plan. Since the Fifth Circuit's decision, the parties reached agreement on Aetna's payment of the $2,300 in question (without any admission of liability) (Dkt. No. 70). With Aetna having made the payment with this Court's approval, the dispute over medical benefits is now moot (Dkt. No. 85). All that is left for the Court to rule on is the dispute over Plaintiff's attorney's fees.

### Summary

In this Court's opinion, there are two highlights to the Fifth Circuit's decision. First, the Fifth Circuit's conclusion that "there is some evidence of bad faith" with respect to Aetna's decision to invoke preauthorization requirement as basis for denying benefits. *Koehler*, 683 F.3d at 191. Second, the Fifth Circuit's published its opinion and provided an extensive critique of Aetna's policies and violations of ERISA, showing these matters were indeed significant. When weighing the balance of factors, the Court finds that an award of attorney's fees is appropriate.

■ Under the ERISA statute, the Court "may allow a reasonable attorney's fee and costs of action." 29 U.S.C. § 1132(g)(1). *Bellaire General Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 832 (5th Cir.1996). In exercising this discretion, the court must perform a two-part analysis. First, the court determines whether the party is entitled to an award of attorney's fees in light of the five relevant factors outlined by the Fifth Circuit. Second, if the party is so entitled, the court calculates the proper amount of the fee award. *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1459 (5th Cir.1995).

■ In the Fifth Circuit, if a party is eligible for attorney's fees under Section 1132(g)(1), a court may consider whether to award fees under the facts and circumstances of the case, guided by the consideration of certain factors, including:

(1) the degree of the opposing party's culpability or bad faith;

(2) the ability of the opposing party to satisfy an award of attorney's fees;

(3) whether an award of attorney's fees against the opposing party would deter other persons acting under similar circumstances;

(4) whether the party requesting attorney's fees sought to benefit all participants and beneficiaries in an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5) the relative merits of the parties' positions.

*See Iron Workers Local # 272 v. Bowen*, 624 F.2d 1255, 1264–65 (5th Cir.1980). The Fifth Circuit further notes that "[n]o one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns" that a court should consider when applying section 1132(g). *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 821 (5th Cir.1997) (quoting *Iron Workers*, 624 F.2d at 1266).

■ When considering the balance of factors, the Court holds the following, with regard to each factor: (1) the Fifth Circuit's ruling indicates evidence of bad faith on the part of Aetna; (2) Aetna can satisfy the award of attorney's fees; (3) there is sufficient evidence that awarding of attorney's fees would deter other insurers from acting similarly; (4) while Ms. Koehler's

attorney *did not* necessarily seek to benefit all participants in the ERISA plan, the litigation *did* resolve significant legal questions; (5) the relative merits of the of the parties' positions are not completely one-sided, but the Fifth Circuit's holding shows the Plaintiff's position is more meritorious. As such, awarding attorney's fees is the proper course of action.

### 1. Bad Faith or Culpability

■ The most important factor for the Court to consider is the issue of bad faith or culpability. A party's conduct may rise to the level of bad faith for particularly wrongful conduct, such as the pursuit of frivolous claims or breach of fiduciary duty. *See, e.g., Freedman v. Texaco Marine Servs., Inc.*, 882 F.Supp. 580, 584–585 (E.D.Tex.1995) (holding that defendant's "indefensible" interpretation of plan could possibly constitute bad faith). Yet a party may still be culpable for conduct while not actually reaching the level of bad faith. *See, e.g., Dial v. NFL Player Supp. Disability Plan*, 174 F.3d 606, 614 (5th Cir. 1999) ("[A]lthough the Court stops short of accusing [defendant] of acting in bad faith, [defendant] is clearly responsible for its erroneous interpretation that was in direct conflict with the plain meaning of the settlement agreement."); *Texas Commerce Bancshares v. Barnes*, 798 F.Supp. 1286, 1289 (W.D.Tex.1992) (finding that "though not necessarily bad faith," defendants' culpability for actions was material).

The Court is persuaded that while the Fifth Circuit did not make a *final* judgment on the issue of bad faith, it nevertheless found sufficient indicia of bad faith by Aetna ("there is some evidence of bad faith") on the major points of contention. *Koehler*, 683 F.3d at 191. Furthermore, any distinction between "bad faith" and "culpability" in this case, where it may exist, cannot escape the Fifth Circuit's clearly critical language regarding Aetna's actions. An attempt to parse the legal and semantic nuances separating "bad faith" and "culpability" would not produce different results.

The Fifth Circuit found an "inadequate [COC] and evidence that Aetna failed to apprise Dr. [Kakar] and Dr. Checo, [Plaintiff's] doctors in the HMO, that they should not refer patients to outside providers without requesting permission from Aetna beforehand." *Id.* Furthermore, Aetna's culpability was indicated by the Fifth Circuit's conclusions "that Aetna relied on a legally incorrect interpretation of ambiguous plan language, and that Aetna violated ERISA regulations in providing an inadequate plan summary." *Koehler*, 683 F.3d at 191. Additionally, the Fifth Circuit concluded that because ERISA regulations "require considerably greater clarity" than offered by Aetna, this "suggests a device to cause insureds to inadvertently forfeit coverage" through misinterpretation of what Aetna's considered correct procedures. *Id.* at 189–91. The Fifth Circuit also appeared to agree with Ms. Koehler when holding that "the [Certificate of Coverage] is ambiguous with respect to preauthorization for outside services rendered on an ad hoc basis." *Id.* at 187.

Aetna's attempt to characterize these judgments as having no bearing on the merits of the case is misguided. This Court cannot ignore the obvious depth and breadth of the Fifth Circuit's conclusions on these matters. Even within the terminology of Aetna's policy itself, the Fifth Circuit found problems. For example, it found that Aetna's use of the defined term "Referral" in the "Out-of Network Services" subsection of the plan was a "contradiction in terms" because the definition itself only applies to a "Participating Provider." *Id.* at 185.

Furthermore, the Fifth Circuit noted: "It is difficult to see how Aetna's leaving

both Koehler and her doctors ignorant of the preauthorization requirement would not 'inhibit or hamper[ ]' her from initiating the procedures" that Aetna argued were necessary. *Id.* at 191. This is particularly relevant because ERISA regulation precludes any claim procedure that "unduly inhibits or hampers the initiation or processing of claims for benefits." 29 C.F.R. § 2560.503–1(b). Additionally Aetna was required to "allow a referral to a non-network physician or provider" in the event that "medically necessary covered services are not available through network physicians or providers." 28 Tex. Admin. Code § 11.506(15).

Aetna contends that documents filed by the Plaintiff provide evidence that the physicians were given Aetna's referral policies, and the physicians were contractually obligated to follow such procedures. Def.'s Resp. at 11–12. Aetna also points to a letter from the referring doctor, Dr. Kakar, which never states that he was "unaware" that referrals had to be requested prior to the services being provided. *Id.* at 11. Aetna also argues that because Ms. Koehler was in an HMO, which acts as a "gatekeeper" plan that requires members to select a primary care physician as the "gatekeeper", this fact, in addition to the written guidelines submitted to the doctors, put them on alert for the required procedures. Aetna also argues that as an HMO operating in Texas, its COC was subject to state regulations with the Texas Department of Insurance, which can disapprove any certificate of coverage that is unclear—and did not do so. Aetna argues: "In sum, the COC was prepared to comply with state law and was approved by the TDI. Moreover, the physicians were apprised that requests for referrals must be made before services were provided." Def.'s Resp. at 19.

Lastly, Aetna also contends that Plaintiff did not exhaust the administrative appeals process before suing. Def.'s Resp. at 4. However, Ms. Koehler *did* submit her second appeal by letter dated February 10, 2010 and Aetna denied the second appeal by a letter dated March 17, 2010. App. to Defendant's Motion for Summary Judgment, Docket Entry No. 12, at 283. Therefore, Aetna's contention that Plaintiff did not file a "second level appeal" is belied by the clear evidence its own appendix for summary judgment.

Ultimately, Aetna appears to be re-litigating the case when the Fifth Circuit has already spoken on a majority of these issues. Indeed, "[u]nder the law of the case doctrine, an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *United States v. Matthews,* 312 F.3d 652, 657 (5th Cir.2002) (citation omitted), cert. denied, 538 U.S. 938, 123 S.Ct. 1604, 155 L.Ed.2d 341 (2003).

The Court finds that the language of the Fifth Circuit overwhelmingly favors the merits of Plaintiff's position, and accordingly, this factor favors an award of attorney's fees. Even if the Fifth Circuit was suggesting that Aetna's actions constituted culpability rather than bad faith, parsing such differences would be fruitless given the one-sided holding of the decision.

### 2. Aetna's Ability to Pay Attorney's Fees

The Court agrees with Plaintiff's assertion that "there is no evidence that Aetna would be unable to pay," and Aetna does not dispute this. Pl.'s Mot. at 8. Thus, the second factor weighs in favor of awarding such fees and costs to Ms. Koehler.

### 3. Deterring Others From Acting Similarly

The third factor addresses whether an award of attorney's fees would deter other persons who will be acting under similar

circumstances, and is thus related to the bad faith factor. Plaintiff argues that "[a]n award of attorney's fees would help deter Aetna and other plan administrators from denying claims on the basis of an undisclosed preauthorization requirement or of any other undisclosed requirement that would result in the claimant forfeiting her benefits under an ERISA plan." Pl.'s Mot. at 8. Plaintiff suggests that the award of attorney's fees would hurt Aetna's profit interest and dissuade it from acting similarly in the future.

The Court is also cognizant of the updated December 3, 2010 rules from Texas Department of Insurance, in which the agency considered the effect of denying claims on the basis of undisclosed policy interpretations. This is outlined in a new "Subchapter M" entitled "Discretionary Clauses." 28 Tex. Admin. Code §§ 3.1201–3.1203.

The Commissioner explained that "[d]iscretionary clauses are unjust, encourage misrepresentation, and are deceptive because they mislead consumers regarding the terms of coverage." http://www.tdi.texas.gOv/rules/2010/documents/3.1201–3.1203.pdf, at p. 5. The new subchapter further "incentive to include consistently applied interpretations in the body of a form ... Such action would enhance uniformity and reliability in benefit provision and reduce potential confusion for not only individuals covered under the same plan but for all individuals receiving coverage under the same form." *Id.* at p. 48.

An award of attorney's fees may provide an incentive to Aetna, and perhaps other insurers as well, to better adhere to the duty of loyalty that is paramount in ERISA. *See Bussian v. RJR Nabisco, Inc.,* 223 F.3d 286 (5th Cir.2000) ("ERISA's duty of loyalty is highest known to the law.") In its briefing, Aetna did not address this issue of future deterrence, but nevertheless, the Court feels this factor weighs in favor of awarding attorney's fees.

### 4. Significant Questions Involving ERISA

As Aetna correctly asserts, "Plaintiff was not seeking to benefit all participants and beneficiaries in an ERISA plan and Plaintiff does not attempt to argue otherwise." Def.'s Resp. at 16. Instead, Ms. Koehler only sought benefits for her own claim. However, this case raised significant issues with regard to ERISA, as shown by the Fifth Circuit's decision *to publish* the opinion, thereby providing precedent for future ERISA cases. While Aetna now argues the decision only touched on routine matters, on June 28, 2012, it nonetheless sought rehearing *en banc* on the basis that the ruling raised issue of "significant importance":

> Panel decision likewise involves one or more questions of exceptional importance in that the Panel construed Aetna's HMO Certificate of Coverage, approved by and on file with the Texas Department of Insurance, and under which Aetna operates its HMO in the State of Texas, as not requiring preauthorization for out-of-network services.

Pl.'s App. B, "Suggestion for Rehearing En Banc." Aetna now contends that their pursuit of *en banc* reconsideration was because of the finding of ambiguity, rather than a core ERISA question. Yet with the Fifth Circuit's ruling laid out clearly, this Court believes the decision raised issue of critical importance. Again, the Fifth Circuit held that "that Aetna relied on a legally incorrect interpretation of ambiguous plan language, and that Aetna violated ERISA regulations in providing an inadequate plan summary." *Koehler,* 683 F.3d at 191. Such a holding may certainly affect the way other insurers deal with these matters. Furthermore, the Fifth Circuit's decision need not alter ERISA law funda-

mentally or radically to nevertheless be significant. In fact, Aetna's decision to litigate the matter suggests it may have feared the precedential effect as well. In May 2010, Aetna engaged in settlement discussions with Plaintiff. Pl.'s Mot. at 7. But according to Plaintiff, Aetna refused to pay the full amount "as a matter of principle." *Id.* Aetna's decision to remove the matter to federal court and litigate the issues extensively suggest it believed the decision could provide significant precedent for other similar claims involving the preauthorization requirement. For that reason, this factor weighs in favor of awarding attorney's fees.

### 5. Merits of the Parties' Positions

It would be difficult for this Court to hold that the merits of the parties' positions are completely one-sided, especially in light of this Court's original summary judgment ruling in favor of Aetna. Additionally, while the Fifth Circuit reversed and remanded the case back to this Court, it did *not* render an official final judgment for the Plaintiff. However, the Fifth Circuit's ruling can only be credibly interpreted as showing that Plaintiff held the more meritorious position. The "decision to award attorneys' fees is left to the sound discretion of the trial court and will be reversed only for an abuse of discretion."

Aetna cites to *Sunbeam–Oster Co., Inc. Group Benefits Plan v. Whitehurst,* in which the Fifth Circuit affirmed a denial of award where relative merits of parties' positions was "not overwhelmingly stacked" on one side. 102 F.3d 1368, 1378 (5th Cir.1996) However a closer examination of the case shows that language was the standard for appellate review:

> Most significantly, for purposes of this case we find essentially *no evidence of culpability or bad faith* on Whitehurst's part, and conclude that, given the district court's ruling in Whitehurst's favor, the relative merits of the parties' posi-

tions were not overwhelmingly stacked on the Plan's side. It follows that the district court's denial of the Plan's request for attorneys' fees was neither arbitrary nor capricious, and is therefore affirmed.

*Id.* (emphasis added). In other words, the standard does not require that the merits be overwhelmingly stacked on one side, but rather, that if they are, and the district court ignores that fact, it can be the basis for a reversal. Furthermore, in the instant case, the Fifth Circuit *did* find some evidence of bad faith, so it is not clear how this Court could ignore that when weighing the merits of the parties' positions.

Aetna also cites to two other Fifth Circuit decisions that suggest a misreading of the cases. In *Izzarelli v. Rexene Prods. Co.,* in which plaintiffs sued a Bank on an ERISA claim, the Fifth Circuit held that "in light of the district court finding that plaintiffs' claim against the Bank was not meritless or groundless, we cannot say that the 'relative merits' of the parties' positions assist the Bank." 24 F.3d 1506, 1526 (5th Cir.1994). Therefore it is unclear how such a standard would help Aetna, since this Court cannot credibly claim that Plaintiff's position is groundless. Aetna also cites to *Pitts v. American Sec. Life Ins. Co.,* in which the Fifth Circuit affirmed a denial of fees where there was "some merit to each party's position." 931 F.2d 351, 358 (5th Cir.1991). However a closer reading of the case reveals that *all five* factors did not favor an award of attorney's fees:

> None of the factors clearly supports an award of attorney's fees for Pitts. In essence, neither party was particularly culpable, neither party was shown to be capable of paying the award, no deterrent effect would flow from an award, no participants of an ERISA plan other than Pitts stand to benefit, no significant

legal question under ERISA has been resolved, and there is some merit to each party's position. *Id.* Clearly the Fifth Circuit was *not* holding that if both parties' positions have some merit, attorney's fees should always be denied. Rather, it was explaining that based the specific contours of that case, none of the factors supported an award, so the fact that both sides had some merit could not displace and overwhelm the other four factors weighing against an award of attorney's fees. In fact, even if this Court were to interpret *Pitts* as Aetna does, when it is applied to this case—in which the Fifth Circuit has clearly found some evidence of bad faith, along with the litany of criticism of Aetna's procedures—it would be highly unusual for this Court now hold that both sides had equal merit.

Finally, this Court is certainly cognizant of *Schadler v. Anthem Life Insurance Company,* in which Chief Judge Fitzwater initially ruled in the defendant's favor on plaintiff's ERISA benefits claim and the Fifth Circuit reversed that decision. 2000 WL 134761. In denying the plaintiff's claim for attorney's fees after the reversal, the district court determined that the defendant's position was not groundless and that, in fact, it had initially ruled in the defendant's favor. *Id.* at *2. However, because of the clearer language in this reversal, particularly the extensive disapproval of Aetna's procedures, as well as the unmistakable statement that "there is some evidence of bad faith," the facts of this case are distinguishable from *Schadler.* Therefore, the fifth factor weighs in favor of awarding of attorney's fees and costs.

### 6. Attorney's Fees

The Supreme Court recently resolved a circuit split regarding the standard for an award of attorney's fees in an ERISA case. *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 130 S.Ct. 2149, 176 L.Ed.2d

998 (2010). The Supreme Court rejected the Fourth Circuit's opinion that only a "prevailing party" could obtain an award of attorney's fees in an ERISA action. 130 S.Ct. at 2156. The Supreme Court additionally held that "a court may consider the five factors" when determining attorney's fees, even though it is not required to. *Id.* at 2158 n. 8

■ The Supreme Court held that the proper standard for an award of attorney's fees under section 1132(g)(1) was whether "the court can fairly call the outcome of the litigation some success on the merits," which can be accomplished with a "length[y]inquiry into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.' " 130 S.Ct. at 2158 (quoting *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 688, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)).

Therefore, the key question is whether Ms. Koehler has achieved "some success on the merits." Aetna argues she has not, because the victory before the Fifth Circuit was "purely procedural" and the payment of her medical bills was done without any admission of liability. Def.'s Resp. at 8. Even taken at face value, the Court would be hard-pressed to ignore the Fifth Circuit's clearly suggestive language in the ruling ("there is some evidence of bad faith") and the specific critique of Aetna's procedures. Therefore, the Court finds that while Plaintiff has certainly not achieved full success on the merits, it is sufficient enough to warrant a partial award of attorney's fees.

### A. The "Lodestar" Figure

■ There is a "strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable' fee." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

The "regular rates" of Ms. Koehler's attorney were $350 per hour in 2010, and $375 per hour from January 1, 2011 through the present (App. Ex. A at 3 ¶ 7.) Ms. Koehler's attorney claims to have expended a total of 242.5 hours in his representation of Ms. Kohler from the preparation of the original complaint on April 16, 2010 through November 9, 2012, claiming that "a reasonable fee would be $90,937.50. Ms. Koehler also seeks a recovery of her attorney's Westlaw charges incurred from August 2010 through July 2012, in the amount of $1,306.75. *See* Pl.'s App., Ex. A at 4 ¶ 9. Plaintiff also submits fees of $9,187.50 from November, 2012 to December, 2012, with Westlaw fees of $631.35. Pl.'s App., Ex. K–L. Thus, the total lodestar figure requested is $102,063.10.

Aetna challenges the hours expended on discovery, arguing that Plaintiff's discovery requests were unreasonable because she served three sets of requests for production, two sets of interrogatories, and two motions to compel. Def.'s Resp. at 18–19. According to Aetna, "Plaintiff's counsel ... expended numerous hours on discovery and discovery motions that were not necessary in this ERISA benefits case where judicial review of the claim determination is generally limited to the administrative record." Def.'s Resp. at 19. Aetna cites a number of cases where ERISA discovery is limited to the administrative record to achieve ERISA's goal of resolving claims "efficiently and inexpensively." *See Vega v. Nat'l. Life Ins. Servs.*, 188 F.3d 287, 299–300 (5th Cir.1999), abrogated on other grounds by *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008); *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir.1999); *Crosby v. La. Health Serv. & Indent. Co.*, 647 F.3d 258, 264 (5th Cir.2011) ("For federal courts to engage in full review of the motivations behind every plan administrator's discretionary decisions would move toward a costly system in which Article III courts conduct wholesale reevaluations of ERISA claims and would seriously undermine ERISA's goal of resolving claims efficiently and inexpensively.") (citation omitted).

■ Nevertheless, Plaintiff points to an alternative paragraph in that same *Crosby* decision from the Fifth Circuit that suggests a plaintiff *can* go beyond the administrative record:

[A] claimant may question the completeness of the administrative record; whether the administrator complied with ERISA's procedural regulations; and the existence and extent of a conflict of interest created by a plan administrator's dual role in making benefit determinations and funding the plan.... We see no reason to limit the admissibility of evidence on these matters to that contained in the administrative record ... A discovery request for such information may be relevant and thus permissible under federal discovery rules.

*Crosby*, 647 F.3d 258, 263 (5th Cir.2011). And indeed, the Fifth Circuit vacated the judgment and remanded, citing the denial of relevant discovery regarding "whether Blue Cross complied with ERISA's procedural requirements." *Id.* Ultimately, the Court feels that when awarding attorney's fees for these matters like this, a compromise is the best path. The *Crosby* case suggests that Plaintiffs *can* go beyond the administrative record, but ERISA favors quicker resolutions and limited discovery. Therefore, Plaintiff will be awarded fees for work done the first motion to compel, first interrogatory, and first production request; but will *not* be awarded fees for work directly related to preparing the second motion to compel, second interrogatory, and second and third production requests. As the Fifth Circuit stated in *Crosby*, "[w]e trust that district courts will guard against abusive discovery," and this

Court prefers to err on the side of caution, lest ERISA cases become plagued by duplicative discovery requests, and the ensuing disputes that come with them. 647 F.3d 258, 264 (5th Cir.2011)

### B. Plaintiff's Attorney's Hourly Rates

The Court does not question Mr. Johnson's hourly rate of $350 during 2010 and $375 during 2011 and afterward as being reasonable, given his experience in the field. *See Walker v. United States Dep't of Housing & Urban Dev.*, 99 F.3d 761, 770 (5th Cir.1996) ("Attorneys' fees are to be calculated at the 'prevailing market rates in the relevant community.'") Indeed, courts in the Northern District have approved regular hourly rates of $345, $350 and $375. *Paris v. Dallas Airmotive, Inc.*, 2004 WL 2100227 (N.D.Tex. Sept. 21, 2004)

Ms. Koehler's attorney also seeks to have his 2010 rate of $350 adjusted upward with 6% interest to $371, in order to put him in the position he could have been in "if payment had been made when the services were rendered." Pl.'s Mot. at 13, citing *Alberti v. Sheriff of Harris County*, 688 F.Supp. 1176, 1194 (S.D.Tex.1987) *modified sub nom. Alberti v. Klevenhagen*, 688 F.Supp. 1210 (S.D.Tex.1987) *aff'd in part, rev'd in part*, 903 F.2d 352 (5th Cir. 1990).

■ Alternatively, Plaintiff seeks an hourly rate of $375 for the work done during 2010. Pl.'s Mot. at 14. Regardless, the Court will not adjust the original fees because the small delay in obtaining the fees does not necessitate any adjustments. Instead, the Court will award Plaintiff the original hourly rates, as originally charged. Therefore for the work done before January 1, 2010, Plaintiff will be awarded $350, and for work done afterward, the rate of $375. The 115.10 hours in 2010 are multiplied by $350 for a total of $40,285; and the 2011 hours (83.60) and 2012 hours (43.80) that add up to 127.40 hours are multiplied by $375 for a total of $47,775. The fee total of $88,060 will be adjusted downward for discovery, however. While the Court does not dispute Plaintiff's right to obtain discovery, the award of fees will be adjusted downward for the *second* set of interrogatories *second* motion to compel, and *second* and *third* requests for production. The Court believes that ERISA claims should be resolved expeditiously, and so a slight adjustment in attorney's fees reflects that jurisprudence. Listed below is the work expended on those discovery requests:

7/8/10 Prepare second request for production. 1.30

7/9/10 Edit second request for production; telecopy to Mr. Shely regarding same. 0.50

8/26/10 Begin reviewing and annotating documents produced by Aetna; prepare third request for production; telecopy to Mr. Shely regarding same; begin preparing motion to compel. 2.20

8/30/10 Continue reviewing and annotating documents produced by Aetna; prepare second set of interrogatories. 2.30

9/01/10 Edit second set of interrogatories; telecopy to Mr. Shely regarding same; continue preparing motion to compel. 5.30

10/13/10 Legal research; begin preparing second motion to compel. 4.00

10/14/10 Legal research; edit second motion to compel; prepare appendix in support; prepare proposed order; letter to Judge Furgeson regarding courtesy copies; begin preparing response to Aetna's motion for protective order. 4.50

11/04/10 Review and annotate order denying second motion to compel. 0.40

Pl.'s App., Ex. C–E. In some cases, the discovery work was blended in with other work, so achieving a perfect calculation of

hours is elusive. Nevertheless, the total from above 20.5 hours, and to accommodate for any possible overlap with non-discovery legal work, the Court will round that downward to 15 hours. At the 2010 hourly rate of $350, this totals **$5,250,** and will be subtracted from the total award.

Finally, Plaintiff seeks more than $9,187.50 in additional fees for the 24.50 hours of legal work rendered from November 10, 2012 to January 2, 2013. The Court will award these as well, but will subtract the 2.60 hours spent preparing for the hearing before this Court on January 3, 2013. The Court is not prepared to award any additional dollar amounts after Aetna paid the $2,300 for the original claim on December 18, 2012. That is, once the matter became a battle over legal fees, rather than the original ERISA claim, to award additional legal fees expended in the litigation would be duplicative and inefficient. Therefore, from the 24.50 hours the Court will subtract the 2.60 hours spent preparing for the hearing, for a total of 21.90 hours. At a rate of $375 per hour, this adds an additional **$8,212.50** to the total.

Additionally, Mr. Johnson submitted Westlaw bills totaling $1,306.75 from the period of August, 2010 to July, 2012. *See* Pl.'s App., Exhibit A. Additionally, Plaintiff shows Westlaw fees of $218.56 and $412.79 for additional work done in November and December, 2012. This total of **$1938.10** will be added to the total fees.

Finally, Ms. Koehler incurred $221 in costs for the filing fee and issuance of citation in the County Court at Law No. 1 of Dallas County, and $55 for service of citation on Aetna. (Pl.'s App. Ex. H.) Ms. Koehler therefore seeks an award of **$276** in costs. The Court awards those fees as well.

## C. Fee award

Thus, after totaling all of the adjustments, the fees awarded by the Court are the following:

**$88,060:** Legal fees from April 16, 2010 to November 9, 2012.

**$8,212.50:** Legal fees from November 12, 2012 to December 19, 2012.

**$1,938.10:** Westlaw charges from 2010 to 2012.

$276: Administrative and filing fees.

($5,250): Legal fees expended on second motion to compel, second interrogatory & third request for production.

**TOTAL: $93,236.60**

## Conclusion

Plaintiff's motion is GRANTED IN PART and DENIED IN PART. Defendant Aetna Health Inc. is ORDERED to pay to Plaintiff attorney's fees in the amount of $93,236.60

IT IS SO ORDERED.